IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PHOUSAYKEO SAYSOURIVONG,

      Petitioner,                        No. CIV S-03-1747 DFL DAD P

      vs.

D. L. RUNNELS, et al.,

      Respondents.                  FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 1999 judgment of conviction entered against him in San Joaquin County Superior Court on the charge of first degree murder. He seeks relief on the basis that his right to due process was violated by jury instruction error. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

PROCEDURAL BACKGROUND

        On September 22, 1999, after a jury trial, petitioner was convicted of first degree murder. (Clerk's Transcript on Appeal (CT) at 394, 536.) The jury also found true allegations that petitioner personally used an assault weapon to commit the crime and that he discharged a

/////

firearm at an occupied motor vehicle. (Id. at 395, 537.) On November 1, 1999, petitioner was sentenced to thirty-one years to life in state prison. (Id. at 537.)

Petitioner filed a timely appeal of his conviction. The judgment of conviction was affirmed by the California Court of Appeal for the Third Appellate District in a reasoned decision dated June 11, 2002. (Answer, Ex. C.) On approximately June 26, 2002, petitioner filed a petition for rehearing in the California Court of Appeal. (Answer, Ex. D.) On July 9, 2002, the Court of Appeal filed a modification of opinion and denial of rehearing. (Answer, Ex. E.)[1] On July 22, 2002, petitioner filed a petition for review in the California Supreme Court. (Answer, Ex. F.) That petition was summarily denied by order dated August 28, 2002. (Answer, Ex. G.) Petitioner filed the instant petition for writ of habeas corpus on August 21, 2003.

FACTUAL BACKGROUND[2]

> In December 1996, Ester Pellegrini leased her 24-acre farm to a group of Laotian men from Fresno; she continued to reside in her home on the farm. The area to be farmed could not be seen from the road because of thick vegetation surrounding the property. It was later determined the men were growing marijuana.
>
> In September 1997, Khimphet Keophounsouk (Sonny) and Saykham Somphoune (Oat) saw defendant and others unloading bags of marijuana from defendant's pickup in Fresno. About a week later Sonny, Oat and Chaipasevt Ong Khothsombath (Ong) drove to Pellegrini's farm where they agreed with two of the cultivators to guard the fields in exchange for money and marijuana.
>
> On October 8, 1997, defendant and his girlfriend's brother, Sengchanh Phansopha (Sam) drove to Pelligrini's farm from Fresno in defendant's pickup. According to Sam, defendant parked the pickup near Pellegrini's residence, went into the fields and returned to the pickup about five minutes later. Defendant obtained a gun resembling an AK-47 rifle which had a banana clip and sawed-off stock and gave Sam a 9-millimeter handgun, telling him to "[w]atch out for a white truck." Defendant said he needed

---

[1] The modification of opinion did not affect the judgment. (Answer, Ex. E at 2.)

[2] The following summary is drawn from the June 12, 2002 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-5, filed on November 5, 2003, as exhibit C to respondents' answer.

to speak to someone in the fields and for Sam to wait.  Defendant then walked back into the fields with the rifle.

That same day, Sonny, Oat and Ong were guarding the marijuana and were armed with an SKS rifle and a 40-caliber Block handgun.  They decided to cook chicken in one of the sheds in the fields.  Ong drove Oat's white 4Runner, which contained the SKS rifle, to get water while Sonny and Oat did the cooking.  Shortly after Ong left, Sonny and Oat heard gunshots.  When they looked down the road they saw defendant standing beside the 4Runner pointing a rifle in the passenger window.  Defendant fired four shots, then fled.

Sonny and Oat went to the 4Runner where they found Ong fatally shot.  They moved Ong's body to the passenger side and drove to the main road where they saw defendant's pickup parked with Sam in it.

As Oat drove toward the pickup, Sam leaned forward.  Believing Sam was defendant and that he was obtaining a gun with which to shoot them, Sonny fired several shots from the handgun at the pickup.  When that gun jammed, Sonny used the SKS rifle to fire several more shots as they drove off.

Oat drove less than a mile and stopped, telling Sonny that he was going back to the scene but would return in a few minutes.  When Oat did not return, Sonny drove off.  En route, he threw the guns in a drainage ditch and left Ong's blanket-covered body in a vineyard several miles from the shooting.  Ong's body was discovered two days later by the vineyard's owner.  Sonny drove the 4Runner to Fresno where he abandoned it.

Sam, who was wounded, tried to drive away but got stuck in a vineyard.  He took the 9-millimeter gun given him by defendant and buried it in a hole he dug in the vineyard.  Pellegrini, who saw Sam stuck in the vineyard, took him into her home and called for an ambulance.

Oat, who had hidden and watched the ambulance and police arrive at Pellegrini's home, paid a stranger to drive him to Fresno.

After a lengthy investigation by law enforcement, defendant was arrested in Massachusetts in February 1999.  Defendant's girlfriend, Phong, had neither seen nor spoken with defendant since October 8, the day her brother was shot.

On December 24, 1997, Robert Bishofberger, a grape farmer who lived near the area where Ong was killed, found an SKS semiautomatic assault rifle.  (People's Exh. 57.)  in [sic] his vineyard.  The rifle's stock was sawed off, it had a banana clip (People's Exh. 58) which was loaded, and it had a bullet jammed

in the chamber.  In his testimony, Sam identified people's exhibits 57 and 58 as looking like the rifle with the banana clip which defendant carried into the field.

At the scene where Sam was shot, investigators found 11 expended 7.62-millimeter rounds.  These rounds could be fired by either an SKS or an AK-47 rifle.  The SKS is a Chinese copy of the Russian AK-47 rifle.  Inside a bag found under the driver's front seat of defendant's pickup, investigators located 25 live rounds of 7.62 millimeter ammunition.  (People's Exh. 77.)

Dean DeYoung, a criminalist with the Department of justice, fired several rounds from the SKS rifle (People's Exh. 57) and compared them with the 11 expended rounds found at the scene of Sam's shooting.  DeYoung concluded the SKS rifle found by Bishofberger could not have fired the 11 expended rounds.  Additionally, the 11 expended rounds were steel-jacketed whereas a round taken from Ong's body (People's Exh. 94) was copper-jacketed.  The rounds from the magazine of the SKS (People's Exh. 109) found by Bishofberger were also copper-jacketed.  DeYoung concluded the SKS rifle found by Bishofberger may or may not have been the weapon that killed Ong.

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See <u>Lindh v.Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

4

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Petitioner's Claim of Jury Instruction Error

Petitioner's sole claim is that his right to due process was violated when the trial court "refused to instruct the jury concerning the definition of an accomplice and the rules applying to accomplice testimony because the jury could have inferred from the evidence that Sonny and Oat fit the statutory definition of accomplices." (Pet. at consecutive p. 5.) Petitioner argues that because there was evidence suggesting that Sonny and Oat may have committed the murder of Ong themselves, the trial court should have given a jury instruction identifying them as

5

possible accomplices and instructing the jury to view their testimony implicating petitioner "with caution." (Id.) Petitioner contends that the trial court's failure to give such an accomplice instructions violated his federal due process right to a fair trial.

The state court record reflects that during the jury instruction conference, petitioner's counsel suggested giving jury instructions on "accomplice liability theory," arguing that "Oat and Sonny are at least potential accomplices." (Reporter's Transcript on Appeal (RT) at 1117.) Petitioner had previously argued to the trial court that it was possible Ong was not killed by petitioner in the marijuana fields but rather in a "shootout" involving Sonny, Oat, Sam, and possibly petitioner, near where petitioner's truck was found. (Id. at 1117-18; see also Answer, Ex. A at 16.) The trial court rejected that argument on the ground that there was "no evidence to support that" and that petitioner's theory was based on "nothing, other than pure speculation." (RT at 1118.) Accordingly, the trial judge declined to give jury instructions regarding accomplice testimony.

On appeal, petitioner argued that the trial court erred in refusing to give jury instructions relating to accomplice liability because there was sufficient evidence for the jury to conclude that Sonny and Oat were "accomplices" to the murder, as that term is defined by California law. Petitioner's theory appears to have been that Sunny and Oat either killed Ong without petitioner's involvement or were somehow involved with petitioner in the murder.[3] Petitioner set forth the evidence supporting his argument in this regard as follows:

> The evidence permitted the inference that Sonny and Oat were both liable to prosecution for Ong's killing. The evidence placed them at the scene of the crime, established they were armed and firing their weapons, and demonstrated a pattern of behavior indicative of Sonny's and Oat's guilty consciousness following the crime. When Detectives Cruz and Wuest first interviewed Sonny and Oat after the killing, they claimed to have no knowledge about Ong's disappearance. (RT 589-590, 694, 931, 1012.) Cruz continued to call Sonny about the case, but Sonny did not disclose anything

---

[3] Petitioner noted that the prosecution "presented no evidence to show that [petitioner] had any motive to kill Ong or anyone associated with the marijuana farm." (Id. at 23.)

6

|   |   |
|---|---|
| 1 | until Cruz divulged he had identified a fingerprint from the scene as Sonny's.  Sonny again denied any involvement, but finally admitted his involvement in the marijuana farm.  (RT 466, 695-696.)  Cruz told Sonny he could be charged with murder unless he told the truth.  (RT 705, 1011-1012, 1028-1030, 1041.)  Cruz told Sonny, "It's better to be a witness," and "You have everything to gain."  (RT 1052-1053.)  Ultimately, Sonny and Oat were granted immunity from prosecution in exchange for their statements to the sheriff's department and their testimony at appellant's trial.  (RT 618, 697, 932.)  At trial, Sonny and Oat admitted that Sonny shot Sam from a vehicle Oat was driving, but they accused appellant of the shooting death of Ong.  (RT 654-659, 671-681, 899-903, 915-922.)  Sonny admitted he falsely told Cruz that he, Oat and Ong had only a .38 millimeter handgun, a Glock .40, and a .9 millimeter gun with them on the day Ong was killed, and neglected to mention that he also had an SKS rifle, the type of gun that the ballistics evidence established was used to kill Ong.  (RT 709, 841-849, 851, 874.)  Sonny also admitted he falsely testified at the preliminary hearing that he had never before shot an SKS rifle.  (RT 740.)  Both Sonny and Oat admitted they fled from the scene after Ong was killed, and Sonny admitted he threw the guns in a drainage ditch, left Ong's dead body in a vineyard, and abandoned the truck.  (RT 685-693, 923-929.) |

(Answer, Ex. A at 18-19.)  Petitioner argued on appeal that "this evidence was more than sufficient to convince the jury that Sonny and Oat could have been prosecuted for Ong's killing and were therefore untrustworthy witnesses."  (Id. at 19.)  Petitioner further argued on appeal that an instruction advising the jury to consider the testimony of Sonny and Oat with caution would have caused the jury to "disregard[ ] Sonny's and Oat's eyewitnesses accounts of the shooting, and decline[ ] to convict [petitioner]."  (Id. at 22.)

Pursuant to California law, a trial court must sua sponte give jury instructions on the pertinent principles of law regarding accomplice testimony "'whenever the testimony given upon the trial is sufficient to warrant the conclusion upon the part of the jury that a witness implicating a defendant was an accomplice.'"  People v. Bevins, 54 Cal.2d 71, 76 (1960) (quoting People v. Warren, 16 Cal.2d 103, 118 (1940)).  California Penal Code § 1111 defines an accomplice as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."  An accomplice includes "all persons concerned in the commission of the offense, whether they

7

directly commit the act constituting the offense or aid and abet in its commission." People v. Scofield, 17 Cal. App. 3d 1018, 1026 (1971).  Evidence is sufficient to support jury instructions relating to accomplice liability if the jury could reasonably conclude that a witness implicating the defendant is an accomplice.  People v. Gordon, 10 Cal. 3d 460, 470 (1973).  The relevant instructions inform the jury that the testimony of the accomplice witness is to be viewed with distrust and that the defendant cannot be convicted on the basis of the accomplice's testimony unless it is corroborated by other evidence which connects the defendant with the commission of the offense.  People v. Rodrigues, 8 Cal. 4th 1060, 1133 (1994).  See also CALJIC Nos. 3.11 (testimony of accomplice must be corroborated); 3.13 (one accomplice may not corroborate another); and 3.18 (testimony of accomplice to be viewed with distrust).

The California Court of Appeal concluded that the evidence introduced at petitioner's trial was insufficient to require the trial court to give accomplice jury instructions sua sponte.  The appellate court reasoned as follows:

> According to defendant, the evidence supporting the giving of accomplice instructions regarding Sonny and Oat consists of their presence at the scene of the killing; they were armed and fired weapons; they lied to investigators about their involvement and presence at the scene and in shooting at Sam; they lied by telling investigators they had three handguns and failed to mention they had an SKS rifle; an SKS-type rifle was the type of weapon used to kill Ong; they fled from the scene after Ong was killed; and Sonny admitted throwing the guns in a drainage ditch and leaving Ong's body in a vineyard.
>
> The foregoing evidence fails to take into consideration the uncontested expert testimony of criminalist DeYoung that ballistics tests effectively eliminated, as the weapon which killed Ong, the SKS rifle used by Sonny and Oat during the shooting of Sam because that rifle used steel-jacketed bullets whereas the rifle used to kill Ong used copper-jacketed bullets, as shown by the removal of a copper-jacketed bullet from Ong's body.  Nor was there any evidence whatsoever that Sonny and Oat possessed a second SKS type rifle or that they possessed any copper-jacketed bullets. However, copper-jacketed bullets were found by Bishofberger, which had a banana clip and a sawed-off stock, was identified by Sam as looking like the weapon he saw defendant carry into the

/////

> fields; copper-jacketed bullets were found beneath the seat of defendant's pickup; and DeYoung could not eliminate the SKS rifle found by Bishofberger as the rifle which killed Ong.
>
> In sum, with the means for Sonny and Oat to have killed Ong having been eliminated, they were not chargeable with his death, and, therefore, could not be accomplices. Defendant's evidence shows no more than Sonny and Oat's presence at the scene of Ong's killing and their attempts to hide their involvement in marijuana cultivation and the shooting of Sam. Consequently, the court did not err in refusing to give the requested accomplice instructions.

(Opinion at 6-7, as modified by order dated July 9, 2002 (filed as Ex. E to respondents' answer).)

A challenge to jury instructions does not generally state a federal constitutional claim. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). Habeas corpus is unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); See also Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process.") The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome. See Thomas v. Hubbard, 273 F.3d 1164, 1179 (9th Cir. 2001), overruled on other grounds by Payton v. Woodford, 299 F.3d 815, 828 n.11 (9th Cir. 2002). Where, as here, the challenge is a failure to give an instruction, the petitioner's burden is "especially

heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

Because a federal court may not issue the writ of habeas corpus on the basis of a perceived error of state law, the issue of whether Oat and Sonny were accomplices to the murder of Ong, as that term is defined by state law, is not cognizable in this habeas corpus proceeding. Indeed, federal courts have rejected the rule that uncorroborated accomplice testimony is insufficient to uphold a criminal conviction. United States v. Augenblick, 393 U.S. 348, 352 (1969) ("[w]hen we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions"); Lisenba v. California, 314 U.S. 219, 227 (1941) ("[t]he Fourteenth Amendment does not forbid a state court to construe and apply its laws with respect to the evidence of an accomplice"); United States v. Lopez, 803 F. 2d 969, 973 (9th Cir. 1996) (accomplice's uncorroborated testimony is sufficient to sustain a conviction unless it is incredible or insubstantial on its face); United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir. 1993) (same); United States v. Turner, 528 F.2d 143, 161 (9th Cir. 1975) ("a conviction may be based on the uncorroborated testimony of an accomplice. . . ."). Under federal law, the fact that testimony may have been given by an untrustworthy witness or that it was contradicted does not make the testimony itself untrustworthy. Lopez, 803 F.2d at 973.

In any event, this court concludes that the trial court's failure to give an instruction informing the jury that the testimony of Oat and Sonny should be viewed with caution because they were potentially "accomplices" in Ong's death did not render petitioner's trial fundamentally unfair. Petitioner's contention that Oat and Sonny were responsible for Ong's death is based on speculation, without any concrete support in the record. As explained by the California Court of Appeal, expert testimony demonstrated that the rifle possessed by Sonny and Oat was effectively eliminated as the murder weapon because it did not fire the type of bullets

found in Ong's body. On the other hand, the bullets found near petitioner's car and in the weapon he carried fired the same type of bullets found in Ong's body. Further, as noted by respondents, the testimony of all the trial witnesses was that petitioner acted alone in killing Ong and that there was a separate shooting when Sonny shot Sam as he was sitting alone in petitioner's truck. This testimony was not incredible on its face and the jury could find it believable. Sonny and Ong's testimony with regard to their actions after the shootings suggests that they fled the scene because they didn't know what else to do under the unexpected circumstances in which they found themselves. (See RT at 685-93, 923-29.) Further, although Sonny and Oat were granted immunity for their testimony at petitioner's trial, the grant of immunity was not likely based on any risk to Sonny and Oat of potential liability for the shooting of Ong. Rather, Sonny and Ong were most certainly potentially liable for their admitted involvement in a marijuana operation and for the shooting of Sam. Indeed, their admitted behavior at the marijuana fields in all likelihood prompted the jury to view their testimony with some caution in any event. An additional instruction to that effect was not necessary. Considering the record as a whole, the lack of jury instructions with respect to accomplice testimony did not render petitioner's trial fundamentally unfair.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////

1  that failure to file objections within the specified time may waive the right to appeal the District
2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: May 24, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:says1747.hc